AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
      Silver Apple iPhone )
      Model: 15 )
Seized as FP& F: 2024255200014701 Item: 0002 )

Case No.  24-mj-08894-LR

FILED
Oct 04 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ carolinalopez  DEPUTY

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means).*

Date:   10/04/2024

Judge's signature

City and state:  El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:　　　　　Silver Apple iPhone
　　　　　　　Model: 15
　　　　　　　Seized as FP& F: 2024255100014701 Item: 002
　　　　　　　Seized from Jennifer PALMA
　　　　　　　(Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 19, 2024, up to and including September 19, 2024, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Red Apple iPhone
Model: 14 Plus
Seized as FP& F: 2024255200014701 Item: 001
Seized from Joelana Jean ALLEN
(Target Device #1)

**A-2:** Silver Apple iPhone
Model: 15
Seized as FP& F: 2024255200014701 Item: 002
Seized from Jennifer PALMA
(Target Device #2)

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Jennifer PALMA (PALMA) and Joelana Jean ALLEN (ALLEN) for transportation of unaccompanied juvenile A.C. (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from PALMA and ALLEN on or about September 18, 2024, incident to the arrest of PALMA and ALLEN. The Target Devices are currently in the possession of the Department of Homeland

Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of

2

California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text

3

messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 18, 2024, BPA S. Barrera was assigned to the U.S. Border Patrol Highway 86 Checkpoint near Westmorland, California. At approximately 9:00 p.m., a grey Toyota Corolla bearing Florida license plates arrived at the primary inspection area. BPA Barrera identified himself as a BPA and questioned the occupants of the vehicle, two adult females and two small children, as to their citizenship. The driver, later identified as PALMA, provided a U.S. Passport Card and the front passenger, later identified as ALLEN, produced an Arizona Identification Card along with two Birth Certificates for the children sitting in the backseat, later identified A.S. and P.P. ALLEN gave BPA Barrera Xerox copies of both Birth Certificates, along with two Certificates of Navajo Indian Blood. BPA Barrera questioned PALMA as to where they were going and PALMA stated that they were going to Disneyland. BPA Barrera asked PALMA if they had any clothes for the kids in the trunk and PALMA stated the were going to Disneyland. BPA Barrera asked PALMA if they had any clothes for the kids in the trunk and PALMA stated they were going to buy clothes at Disneyland. BPA Barrera asked PALMA to place the vehicle in the secondary area for further investigation of the documents she provided.

11. In secondary, BPA Barrera asked PALMA if they were smuggling the two minor passengers and PALMA admitted they were. BPA Barrera asked PALMA where they were going to take the children and PALMA stated they were taking them somewhere in Indio. At this time, BPA Barrera placed PALMA and ALLEN under arrest and all four occupants were escorted into the Checkpoint. PALMA, ALLEN and the two unaccompanied juveniles were later transported to the Central Prosecutions Section for further questioning and processing.

12. During a post-Miranda statement, PALMA stated that she understood her rights and was willing to answer questions without the presence of an attorney. PALMA stated she has been apprehended twice at the San Luis Port of Entry for smuggling unaccompanied juveniles. PALMA stated that her friend offered her a job to cross kids through the San Luis Port of Entry and PALMA offered the job to her friend, ALLEN.

5

| | |
|---|---|
| 1 | PALMA informed ALLEN that all she had to do was use the birth certificates of her own |
| 2 | children and walk through the pedestrian lane at the San Luis Port of Entry. PALMA also |
| 3 | informed ALLEN that she would pay her $1,500 if she agreed to do the job. PALMA stated |
| 4 | that ALLEN agreed to do the job. PALMA stated that on September 18, PALMA and |
| 5 | ALLEN left Phoenix towards San Luis Port of Entry into the United States alone, |
| 6 | approximately 30 minutes before ALLEN. PALMA stated that once in the United States |
| 7 | she was going to drive to Phoenix, but she received a call from ALLEN telling he that she |
| 8 | had crossed into the United States and was waiting for her. PALMA returned to San Luis |
| 9 | Port and picked up ALLEN and the two children. PALMA stated that she was going to |
| 10 | drive to Indio, and once there she was going to call Fernando and he would call the parents |
| 11 | of the children and inform them that they were ready to be picked up. PALMA also stated |
| 12 | that she was going to paid $1500 by the people that picked up the children. PALMA stated |
| 13 | that the melatonin that was found in the vehicle was hers. PALMA stated that she uses it |
| 14 | to help her fall asleep. |
| 15 | 13.   During a post-Miranda statement, ALLEN stated that her friend, PALMA, |
| 16 | offered her a job to cross two children through the San Luis Port of Entry. ALLEN stated |
| 17 | that PALMA told her that all she had to do was use the birth certificates of her own children |
| 18 | and walk through the pedestrian lane at the San Luis Port of Entry. ALLEN stated that |
| 19 | PALMA was going t pay her $1200 if she agreed to do the job. ALLEN stated that on |
| 20 | September 18, ALLEN and PALMA left Phoenix towards San Luis Colorado, Mexico with |
| 21 | the intent to pick up two unaccompanied juveniles and walk them through the San Luis |
| 22 | Port of Entry. ALLEN admitted that she knew that what she was doing was illegal. ALLEN |
| 23 | stated that PALMA coached her along the way on what to tell the Customs Officers when |
| 24 | she crossed with the children. ALLEN also stated that PALMA told her to say that they |
| 25 | had gone to a dentist appointment in San Luis. ALLEN claims that when they walked out |
| 26 | of the dentist office two small children were waiting for them. ALLEN stated that she does |
| 27 | not know for sure but believes that PALMA gave the youngest child something so that he |
| 28 | could fall asleep. ALLEN stated that they waited approximately 30 minutes before they |

proceeded to walk to the San Luis Port of Entry. ALLEN stated that her and PALMA both walked together through the pedestrian lane at the San Luis Port of Entry. ALLEN stated that PALMA crossed a few people ahead her. ALLEN stated that once in the United States they walked to where they had let their car parked. ALLEN stated they then stopped at a Walmart again to buy the four-year-old a car seat. ALLEN stated that PALMA told her that they were going to drive to Indio to drop off the children and get paid.

14. During a search incident to arrest of PALMA and ALLEN, two cellphones were found: a red Apple iPhone (Target Device #1) was found by BPA Barrera in the front passenger seat next to ALLEN and ALLEN claimed ownership of this cellphone. A silver Apple iPhone (Target Device #2) was found by BPA Barrera in PALMA's purse and PALMA claimed ownership of this cellphone. All cellphones were seized as evidence.

15. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 19, 2024, up to and including September 19, 2024, the day after the arrest of PALMA and ALLEN.

## METHODOLOGY

16. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

7

1  the data contained on the device. For that reason, the device may only be powered in a
2  secure environment or, if possible, started in "flight mode," which disables access to the
3  network. Unlike typical computers, many cellular telephones do not have hard drives or
4  hard drive equivalents and, instead, store information in volatile memory within the device
5  or in memory cards inserted into the device. Current technology provides some solutions
6  for acquiring some of the data stored in some cellular telephone models using forensic
7  hardware and software. Even if some of the stored information on the device may be
8  acquired forensically, not all the data subject to seizure may be so acquired. For devices
9  that are not subject to forensic data acquisition or that have potentially relevant data stored
10 that is not subject to such acquisition, the examiner must inspect the device manually and
11 record the process and the results using digital photography. This process is time and labor
12 intensive and may take weeks or longer.

13  17.  Following the issuance of this warrant, a case agent familiar with the
14 investigation will collect the Target Devices and subject them to analysis. All forensic
15 analysis of the data contained within the telephones, and their memory cards will employ
16 search protocols directed exclusively to the identification and extraction of data within the
17 scope of this warrant.

18  18.  Based on the foregoing, identifying, and extracting data subject to seizure
19 pursuant to this warrant may require a range of data analysis techniques, including manual
20 review, and, consequently, may take weeks or months. The personnel conducting the
21 identification and extraction of data will complete the analysis within ninety (90) days of
22 the date the warrant is signed, absent further application to this Court.

23  //
24  //
25  //
26  //
27  //
28  //

8

# CONCLUSION

19. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PALMA and ALLEN used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by PALMA, ALLEN, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 4th day of October, 2024.

_____  11:29 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-1:	Red Apple iPhone
	Model: 14 Plus
	Seized as FP& F: 2024255200014701 Item: 001
	Seized from Joelana Jean ALLEN
	**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:	Silver Apple iPhone
Model: 15
Seized as FP& F: 2024255100014701 Item: 002
Seized from Jennifer PALMA
(Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 19, 2024, up to and including September 19, 2024, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.